757 S.E.2d 553

Amber JOHNSON, Respondent,

v.

Stanley E. ALEXANDER, Mario S. Inglese,
and Mario S. Inglese, P.C., Defendants,

Of whom Stanley E. Alexander is the Appellant.

Mario S. Inglese and Mario S. Inglese,
P.C., Third–Party Plaintiffs,

v.

Charles Feeley, Third–Party Defendant.

Appellate Case No. 2011–196007.

No. 5208.

Court of Appeals of South Carolina.

Heard Oct. 16, 2013.

Decided March 19, 2014.

Rehearing Denied May 16, 2014.

Joel W. Collins, Jr., Collins & Lacy, P.C., of Columbia, and Robert Fredrick Goings, Goings Law Firm, LLC, of Columbia, for Appellant.

Justin S. Kahn, Kahn Law Firm, LLP, of Charleston, and Mary Leigh Arnold, Mary Leigh Arnold, P.A., of Mt. Pleasant, for Respondent.

FEW, C.J.

This is an appeal from an order of partial summary judgment in a legal malpractice action in which the circuit court ruled attorney Stanley E. Alexander breached his duty to his client Amber Johnson and proximately caused her damages in connection with a real estate closing. We reverse and remand for trial.

## I. Facts and Procedural History

In 2006, Johnson entered into a contract to purchase real estate in North Charleston from Carla Anderson, and retained attorney Mario Inglese to close the transaction. Inglese contracted with attorney Charles Feeley to perform a title search on the property. Due to a scheduling conflict, Inglese was unable to conduct the closing and Alexander acted as the closing attorney. Alexander paid Inglese for Feeley's report of the results of his title search. The report indicated all

taxes due on the property had been paid. In actuality, Anderson had not paid the 2003 and 2004 taxes, and in October 2005, the Charleston County delinquent tax collector seized the property from Anderson and sold it at a tax sale to Westwood Properties, LLC.

Johnson sued Alexander, Inglese, and Inglese's law firm. Alexander admitted an attorney-client relationship existed, and thus he owed a duty of reasonable care to Johnson, but denied he breached his duty. Alexander cross-claimed against Inglese and his law firm, claiming he reasonably relied on the title search Inglese provided to him. Inglese cross-claimed against Alexander and filed a third-party complaint against Feeley. After discovery, Johnson filed a motion for partial summary judgment against Alexander. The circuit court granted the motion, finding as a matter of law Alexander breached his duty to Johnson and caused her damages in an amount to be determined at trial.

## II. Standard of Review

When reviewing an order granting summary judgment, an appellate court employs "the same standard applied by the trial court under Rule 56, SCRCP." *Wachovia Bank, N.A. v. Coffey,* 404 S.C. 421, 425, 746 S.E.2d 35, 37 (2013) (citation omitted). Rule 56 provides the trial court shall grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Quail Hill, LLC v. Cnty. of Richland,* 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citation omitted). "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Town of Hollywood v. Floyd,* 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013).

## III. Analysis

The attorney-client relationship is fiduciary in nature, *Spence v. Wingate,* 395 S.C. 148, 158, 716 S.E.2d 920, 926

(2011), and requires the attorney "to render services with the degree of skill, care, knowledge, and judgment usually possessed and exercised by members of the profession." *Holy Loch Distribs., Inc. v. Hitchcock*, 340 S.C. 20, 26, 531 S.E.2d 282, 285 (2000). An attorney is not a guarantor of a favorable result to the client, but is liable only if he fails to meet the appropriate standard of care. *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 170 (2012) (stating "[a] plaintiff in a legal malpractice action must establish four elements," including "a breach of duty by the attorney"); *Harris Teeter, Inc. v. Moore & Van Allen, PLLC*, 390 S.C. 275, 289, 701 S.E.2d 742, 749 (2010) (citing language quoted above from *Holy Loch Distributors* as "[t]he correct standard of care" for attorneys). In the specific context of a real estate closing, "[t]he fact that an attorney is incorrect as to the ultimate marketability of a title to real estate does not establish that he was negligent." *Bass v. Farr*, 315 S.C. 400, 404, 434 S.E.2d 274, 277 (1993); *see also Jennings v. Lake*, 267 S.C. 677, 680, 230 S.E.2d 903, 904 (1976) (stating "an attorney, who *negligently* certifies a title to be good, is liable to his client for the damages sustained as a proximate result of such *negligence*" (emphasis added)). Rather, a plaintiff alleging legal malpractice arising out of a real estate closing must establish the standard of care for the particular situation and prove the attorney breached the standard. *Harris Teeter*, 390 S.C. at 282, 701 S.E.2d at 745.

The circuit court focused its inquiry on whether an attorney conducting a title search on this property should have discovered the delinquent taxes from 2003 and 2004 and the tax sale from 2005. That inquiry, in turn, focused on whether the information was in fact reflected in the public records of Charleston County when Feeley performed the title search in August 2006. On this question, Johnson submitted affidavits from the interim Delinquent Tax Collector and a non-lawyer in the business of conducting title searches, both of whom stated the information was publicly available at that time. The circuit court ruled based on these affidavits that "[i]n August 2006, ... Charleston County Delinquent Tax records showed the property taxes were delinquent in the years 2003 and 2004, and that the Property had been sold at a tax sale on October 3, 2005," and "the public records concerning these

issues were available ... by using the Charleston County Online Tax System."

This would be the correct focus if the issue were the liability of the attorney who performed the title search. Alexander, however, did not perform the title search. To determine Alexander's liability, the issue is not whether a reasonable attorney conducting a title search on the property would have found the information, but whether Alexander acted reasonably under the existing circumstances in relying on the title search performed by Feeley. The circuit court correctly recognized this as the issue, stating, "The standard of care for a title examination is not the issue. The issue is the standard of care for an attorney conducting a real estate closing." The circuit court noted "a closing lawyer may rely upon the title examination performed by others," and correctly stated "the closing attorney must not be negligent" in doing so.[1] The court went on to conclude:

> Alexander was negligent in not ensuring good and marketable title because he (or his agent) failed to determine that public records showed the delinquent taxes on the property ... and that the property had been sold at a tax sale.... It was the failure to discover and properly act upon public records that results in Alexander being negligent and liable to Johnson.

The court's correct identification of the issue—whether Alexander acted with reasonable care in relying on Feeley's title search—is inconsistent with its ruling that Alexander is liable as a matter of law for Feeley's failure to discover what was in the public records. Feeley is the attorney who failed to discover the contents of the public record. If Feeley was negligent, Feeley is liable. For Alexander to be liable, however, his reliance on Feeley, or his decision not to do the title search himself, must have been negligent. As to Alexander's liability, Johnson was not entitled to summary judgment. First, Johnson offered no evidence as to the standard of care a real estate closing attorney must meet in relying on a title search performed by another attorney. *See Harris Teeter,*

---

1. The court actually stated "the closing attorney must not be negligent in ensuring the purchaser gets good and marketable title to the property." We address the significance of this language below.

390 S.C. at 282, 701 S.E.2d at 745 (stating "a plaintiff in a legal malpractice action must establish this standard of care by expert testimony"). Second, the circuit court recognized "a closing attorney may rely upon the title examination performed by others," and yet held Alexander liable as a matter of law because the "other" attorney did not discover the information about the delinquent taxes and sale.

■ We find the evidence relating to the correct issue—whether Alexander acted with reasonable care in relying on Feeley's title search—viewed in the light most favorable to Alexander, leaves a genuine issue of material fact for trial and thus precludes judgment for Johnson as a matter of law.

The circuit court ruled, and Johnson argues on appeal, Alexander admitted his standard of care when Alexander stated Johnson "was supposed to have good and marketable title," and he "had a duty or responsibility to make sure that she got the property free and clear with good and marketable title." Alexander also stated in the same discussion, however, that his responsibility was "to close [Johnson's] transaction for her to the best of my abilities and based on the information I had at the time." We have no doubt these statements by Alexander will be important at trial. For summary judgment purposes, however, we do not believe Alexander's statements can be fairly interpreted as a concession that he had an absolute responsibility to deliver good and marketable title. Rather, considering Alexander's statements in the light most favorable to him, he conceded only that he must act with reasonable care in closing the transaction, including his decision to rely on Feeley's title search and not do a title search himself.

Johnson also argues Alexander is liable because Feeley was Alexander's agent. However, the circuit court did not grant partial summary judgment on the basis of agency. Though the circuit court made a reference to Feeley being Alexander's agent, the court made no findings as to whether Johnson established the elements of agency as a matter of law. *See generally Jamison v. Morris*, 385 S.C. 215, 221–22, 684 S.E.2d 168, 171 (2009) (defining agency); *Richardson v. P.V., Inc.*, 383 S.C. 610, 615, 682 S.E.2d 263, 265 (2009) (defining actual authority); *R & G Constr., Inc. v. Lowcountry Reg'l Transp.*

*Auth.*, 343 S.C. 424, 433, 540 S.E.2d 113, 118 (Ct.App.2000) (defining apparent authority). In most situations, "[a]gency is a question of fact," *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 226, 317 S.E.2d 748, 752 (Ct.App.1984), and "questions of agency ordinarily should not be resolved by summary judgment." *Fernander v. Thigpen*, 278 S.C. 140, 142, 293 S.E.2d 424, 425 (1982) (citation omitted). Our supreme court has not addressed whether or under what circumstances an agency relationship exists as a matter of law between a real estate closing attorney and a person performing a title search, and we decline to address the issue here. Whether Feeley was Alexander's agent is a question to be resolved on remand.

## IV. Conclusion

We hold Alexander cannot be liable as a matter of law simply because Feeley failed to discover the unpaid taxes and tax sale. The decision of the circuit court is **REVERSED** and the case is **REMANDED** for trial.

KONDUROS, J., concurs.

PIEPER, J., concurring in result.

I concur in the result reached in the majority opinion to reverse the grant of summary judgment and to remand. I believe a material dispute exists as to the nature of any agency relationship between the attorneys involved. I also believe a material dispute exists as to whether Johnson, as the client, authorized the use of, or agreed to rely upon, the title work of any other attorney. *See Garvin v. Bi–Lo, Inc.*, 343 S.C. 625, 628, 541 S.E.2d 831, 833 (2001) ("Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and the conclusions and inferences to be drawn from the facts are undisputed."); *Simmons v. Berkeley Elec. Co-op. Inc.*, 404 S.C. 172, 178, 744 S.E.2d 580, 584 (Ct.App. 2013) ("Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law.").